# SUPREME JUDICIAL COURT,

### FOR THE

## COUNTY OF HAMPDEN, SEPTEMBER TERM 1872, AT SPRINGFIELD.

PRESENT:

HON. REUBEN A. CHAPMAN, CHIEF JUSTICE.
HON. JOHN WELLS, ⎫
HON. JAMES D. COLT, ⎬ JUSTICES.
HON. SETH AMES, ⎪
HON. MARCUS MORTON, ⎭

WILLIAM B. C. PEARSONS & others *vs.* CHARLES W. RANLETT

The St. of 1872, *c.* 62, authorizing the town of Holyoke to supply itself with water, provided in §§ 2, 3, that the town might take land and construct waterworks, and in subsequent sections that, to pay expenses, the town might issue bonds, signed by the treasurer and countersigned by the chairman of the selectmen, and might sell or pledge the same; as it might deem proper; that the town treasurer, *ex officio*, and six persons, chosen by the inhabitants, should "form a board of water commissioners, who shall execute, superintend and direct the performance of all the works, matters and things mentioned in this act, and exercise all the rights, powers and privileges hereby granted, and not otherwise specifically provided for herein, subject to the vote of the town;" that a majority of said commissioners should be a quorum for the exercise of the powers and duties prescribed by the act; and that the commissioners should establish such prices for the use of the water as would, if practicable, form a sinking fund, of which they should be trustees. The town chose the commissioners, and voted that they should be authorized to issue the bonds, to negotiate them as they might deem best, to exercise in the name of the town all the powers granted in §§ 2, 3, of the statute, such powers to be exercised as a majority of the board should determine, to pay all expenses of constructing the waterworks

out of the proceeds of the sale of the bonds, and to pledge the bonds, if they should see fit. The bonds were printed and held by the treasurer. An alternative writ of *mandamus* to the treasurer, issued on the petition of a majority of the board, set forth that the commissioners had contracted large debts, and needed the bonds to raise the money to meet their just obligations, but that the treasurer refused to deliver the bonds into the custody of the board. The return of the treasurer alleged that the board was not entitled to have the custody of the bonds, or to negotiate, pledge or issue them, or to receive the proceeds thereof; that he had signed the bonds, and was ready to deliver them to any person when authorized by the proper authority on receiving the amount for which they should have been negotiated or pledged by the proper authority; and that if the writ ought to issue at all, it ought to issue only on the petition of the inhabitants of the town. *Held*, on demurrer to the return, that a peremptory writ ought to issue, commanding the treasurer to deliver the bonds into the custody of the board. WELLS, J., dissenting.

MANDAMUS on the petition of William B. C. Pearsons and four others, representing themselves as a majority of the board of water commissioners of the town of Holyoke. The writ set forth that the act to supply the town of Holyoke with fresh water (St. 1872, *c.* 62, which in §§ 2, 3, provides for the taking of water and land and the construction of waterworks) was duly accepted by the town at a legal meeting, and at the same meeting said commissioners with John Delaney, were duly elected water commissioners, and, with the respondent, who then and still was the town treasurer, constituted the board of water commissioners; that the members of the board entered upon the duties of their office; that the town voted that the water commissioners be authorized to take immediate measures for the introduction of water to the town, " that the water commissioners be authorized to issue coupon bonds signed by the treasurer and countersigned by the chairman of the selectmen, to be denominated Holyoke Water Bonds, to an amount not exceeding two hundred and fifty thousand dollars, as provided by the act of the Massachusetts Legislature, approved March 7, 1872, said bonds to be issued of the several denominations of one hundred, five hundred, and one thousand dollars, in such proportions as the commissioners may direct, and made payable in current funds on the 1st day of July 1900, at the office of the treasurer of the town or city of Holyoke, and to bear interest at the such rate as shall be prescribed by the commissioners within the limits of said act," and " that the board of water commissioners be authorized to negotiate the Holyoke Water Bonds in such amounts and at such times as they may

deem best." At a subsequent meeting, the town voted, " that in addition to the taking and holding of lands and water, as pro-vided in the previous vote, the board of water commissioners be authorized to exercise, in the name of the town of Holyoke, all the other powers granted to said town by section 2 and section 3 of the act of the Legislature of Massachusetts, entitled an act to supply the town of Holyoke with pure water, approved March 7, 1872, such powers to be held and exercised by said board in such a manner as a majority thereof shall determine, and that said board be authorized to pay all costs of constructing the water-works authorized by said act, and all expenses incurred in carry-ing out the provisions of this vote and the previous vote, out of the proceeds of the sale of the Holyoke Water Bonds provided for in said act," and " that the board of water commissioners be authorized, if in their judgment it shall be expedient, to pledge the Holyoke Water Bonds to such amount as they shall see fit for the money borrowed to carry on the construction of waterworks as voted by the town."

The writ further set forth that under the authority of said act, and pursuant to the vote of the town, the said commissioners caused bonds to be prepared and printed ready for the signatures of the town treasurer and the chairman of the selectmen of the town, and the respondent, town treasurer as aforesaid, received them into his possession, and thereupon it became his duty, in his official capacity as town treasurer, to sign the bonds and deliver them upon demand into the custody of the board for sale, nego-tiation or pledging, and said commissioners had duly requested him to sign the bonds and to deliver the same into the custody of the board, but he had refused, and still refused so to do, claiming that in his capacity of town treasurer he was entitled to the cus-tody and control of the bonds and of all the proceeds thereof ; and " that under the authority of said act, and pursuant to said votes, said commissioners had proceeded to take lands and water and to contract a large amount of indebtedness in constructing waterworks, and were greatly in need of money to meet their just obligations in that behalf contracted, and of said bonds for the purpose of raising said money as intended by said act."

The writ commanded the respondent to sign said bonds, as town treasurer as aforesaid, without delay, "and place the same in the custody of said board of water commissioners, to be disposed of in accordance with the provisions of said act and said votes, or to show cause to the contrary thereof."

The respondent, in his return to the writ, admitted that the St. of 1872, c. 62, was duly accepted by the town; that the commissioners named in the writ were duly elected, that the votes recited in the writ were passed; that bonds to the par value of $250,000 had been printed under the direction of the board of water commissioners, and that he had been requested to sign the same in his official capacity as treasurer of the town; and alleged "that he is the legally chosen and qualified treasurer of said town, and has given bond with sureties for the faithful discharge of the duties of his office to the town; that it is his duty as such treasurer to receive and take charge of all sums of money belonging to the town, and to pay over and account for the same according to the order of the town or its officers duly authorized in that behalf; that the proceeds of said bonds of the town, whether the same should be sold or pledged, would be money belonging to the town, which it would be his duty, as such treasurer, to receive and take charge of; that if he should permit the bonds to go out of his custody and control, he would become responsible to the town for the value thereof, and so cannot be required to part with the bonds, or any of them, except on receipt of the value thereof at a rate fixed by the town or its representatives thereto duly authorized; that there is nothing in said act which authorizes the town to empower the board of water commissioners to negotiate, or pledge the bonds or any part thereof, or to issue the same, or to have the custody thereof, or to receive the proceeds thereof, or to borrow any money thereon, or to pay any of the liabilities of the town created by the action of said commissioners in taking land or water, or in making aqueducts, dams, reservoirs, buildings or fixtures, excavations or embankments, or in doing any other thing in executing, superintending or directing the performance of the works, matters and things in said act mentioned; that the liabilities so created are the liabilities of the town, and, in

creating them, the board of water commissioners has not **incurred** and will not incur any personal obligation to pay them, or **any** part of them, and, in creating them, acts merely as a body of servants of the town appointed to oversee a certain work of the town, and is not in need of any money to meet any liabilities or obligations of them, the said commissioners, or any indebtedness of them, the said commissioners, contracted in taking lands or water, or in constructing waterworks; that the said water commissioners have not any intent or obligation in relation to the bonds, or the payment of the liabilities created, under said act of the Legislature, other than each citizen of the town has, and that they are not, and never have been authorized or empowered by vote of the town, or of the inhabitants thereof, to apply for the writ, and have no right to apply for the same in their own name; that if the said commissioners, or any other persons, have any claim on the town in their own behalf, for services rendered, or moneys expended in behalf of the town, they have a plain, adequate and complete remedy against the town at law; that he has, and had before the petition for this writ was made, signed the bonds in his official capacity, and is ready to deliver them to any person or persons when thereto instructed by the proper authority, on receiving the amount for which they shall have been negotiated or pledged by any one having authority to sell or pledge them; that, by the by-laws of the town, it is made the duty of the treasurer to negotiate all loans that may be made for the town, under the authority and sanction of the selectmen, which by-law was approved before the said act was passed; that he is, *ex officio*, a member of said board of water commissioners; that the said commissioners are not entitled to said writ; and that if the writ ought to issue against him, it ought to issue only on petition of the inhabitants of the town."

The petitioners demurred to the return, for the reason that the matters set out therein were not sufficient in law to justify the respondent in declining to obey the writ.

*M. P. Knowlton*, for the petitioners.

*A. L. Soule*, for the respondent.

MORTON, J. This case comes before us upon a demurrer to the return of the respondent to an alternative writ of *mandamus*, issued upon the petition of a majority of the board of water commissioners of the town of Holyoke.

A majority of the court is of opinion that a peremptory writ of *mandamus* should issue. The object of the petition is to compel the respondent to deliver into the hands and custody of the board of water commissioners the water bonds signed by the treasurer and countersigned by the chairman of the selectmen, under the " Act to supply the town of Holyoke with pure water." St. 1872, *c.* 62.

The respondent contends that, as treasurer of the town, it is his duty to receive and take charge of all sums of money belonging to the town, and to pay over and account for the same according to the order of the town or its duly authorized officers, and therefore that he ought not to part with said bonds, or permit them to go out of his custody and control, except on the receipt of their value or proceeds. We think his view of his rights and duties is founded upon an erroneous construction of the statute and of the votes of the town passed under it.

The fourth section of the statute provides that the town, for the purpose of paying the expenses of supplying itself with water, may issue coupon bonds, to be denominated " Holyoke Water Bonds," to an amount not exceeding $250,000, " and said town may sell said bonds at public or private sale, or pledge the same for money borrowed for the purposes of this act, upon such terms and conditions as it may deem proper."

The fifth section provides that " the treasurer of said town, *ex officio*, and six persons to be elected by ballot by the inhabitants, as hereinafter provided, shall form a board of water commissioners, who shall execute, superintend and direct the performance of all the works, matters and things mentioned in this act, and exercise all the rights, powers and privileges hereby granted, and not otherwise specially provided for herein, subject to the vote of said town."

The sixth section provides for the election of the six commissioners, so that two shall be elected each year for a term of three

years, and that they shall receive such " compensation as the said town by vote may prescribe, and a majority of said commissioners shall be a quorum for the exercise of the powers and duties prescribed by this act."

The seventh section provides that the commissioners shall establish prices or rents for the use of the water, so as, if practicable, to create a sinking fund for the extinguishment of the bonds, and that " said commissioners shall be trustees of said fund, and shall annually, and as often as said town may require, render an account of all their doings in relation thereto."

The act was duly accepted by the town at a legal meeting. At the same meeting the commissioners were elected, and votes were passed authorizing them to take immediate measures for the introduction of water under the act, and " to issue coupon bonds signed by the treasurer and countersigned by the chairman of the selectmen," as provided by the act, and it was also voted " that the board of water commissioners be authorized to negotiate the Holyoke Water Bonds in such amounts and at such times as they may deem best."

At a subsequent meeting it was voted, " that in addition to the taking and holding of lands and water, as provided in the previous vote, the board of water commissioners be authorized to exercise, in the name of the town of Holyoke, all the other powers granted to said town by section 2 and section 3 of the act of the Legislature of Massachusetts, entitled an act to supply the town of Holyoke with pure water, approved March 7, 1872, such powers to be held and exercised by said board in such a manner as a majority thereof shall determine, and that said board be authorized to pay all costs of constructing the waterworks authorized by said act, and all expenses incurred in carrying out the provisions of this vote and the previous vote, out of the proceeds of the sale of the Holyoke Water Bonds provided for in said act." It was further voted, " that the board of water commissioners be authorized, if in their judgment it shall be expedient, to pledge the Holyoke Water Bonds to such amount as they shall see fit for the money borrowed to carry on the construction of waterworks as voted by the town."

The parts of the act we have referred to show that the general scheme and purpose of the act was to place the administration of the affairs connected with the supply of water in the hands of a new and independent board of officers, and not in the hands of those who administer the ordinary affairs of the town ; and the votes passed indicate that the town accepted the act with the same view of its effect.

Under the act and the votes, most of the powers and duties created by the act are to be exercised and performed by the water commissioners in the name of the town.   They are to take lands and water by purchase or otherwise, to construct the waterworks, to issue the water bonds after they are signed and countersigned, to negotiate them in such amounts and at such times as they deem best, to sell or pledge them as they find necessary, to establish water rates, and to act as trustees of the sinking fund.   Both the act and the votes of the town provide that these powers and duties may be exercised and performed by a majority of the board ; and independently of these provisions, the joint authority conferred upon the board would be construed as giving such authority to a majority.   Gen. Sts. *c.* 3, § 7, *cl.* 3.   The claim made by the defendant is inconsistent with the full powers thus conferred upon the board.   The power given to the board to issue and negotiate, to sell and to pledge the bonds, necessarily implies that they are to have the custody and control of them in order to issue and dispose of them.

The act makes the treasurer one of the board of commissioners, but there is nothing in it to indicate that he is to have any greater power than any other member of the board.   We cannot yield to the argument that because the treasurer is, *ex officio*, a member of the board, it is to be implied that he is to have the custody of the bonds and of their proceeds as treasurer, and is responsible for them under his official bond.   Such an implication is in conflict with the powers conferred by the act and the votes upon a majority of the board, and therefore cannot arise.   It follows of course that, if the town intrusts its money to an independent board, the treasurer is not responsible for it under his official bond to the town.   We cannot know the object of putting

the treasurer upon the board of commissioners. If the purpose had been to vest in him greater powers than the other commissioners have, or to impose upon him special duties and responsibilities, we think it would have been so provided in the statute.

But the respondent objects that, if the treasurer improperly refuses to deliver the bonds, the proper party to apply for a *mandamus* is the town, and that the petitioners, having only the same interest which other citizens have, cannot maintain this application. We do not understand him as contending that *mandamus* is not the proper remedy, to compel him to perform his duty, but that these petitioners are not the proper parties to apply for it. Undoubtedly, when a private citizen applies for a writ of *mandamus*, he must show that he has some special interest in the subject matter different from the interest which every other citizen has. But these petitioners are a majority of and represent the board of water commissioners. They do not apply as private citizens, but as a board of public officers charged by law with the performance of important public duties, which they cannot perform while the respondent refuses to perform his duty. As such officers, they are entitled to demand the bonds, and it falls within the scope of their general powers to apply for a proper process to enforce their demand. We are of opinion that they are the proper parties, and entitled to maintain this petition. *Wellington, petitioner*, 16 Pick. 87. *Waldron* v. *Lee*, 5 Pick. 323.

*Peremptory writ of mandamus to issue.*

WELLS, J., dissenting. I regret that I feel compelled to dissent from the decision of the court in this case.

It is a writ of *mandamus*, issued in behalf of a majority of the persons composing the "board of water commissioners" for the town of Holyoke, against Charles W. Ranlett, who is the treasurer of the town of Holyoke, and, as such, by the terms of the act of the Legislature authorizing the creation of the board, is made, *ex officio*, a member thereof. By the decision of the court, Ranlett is compelled to surrender the bonds of the town, prepared for the purpose of raising money to meet the expenses of the works to be undertaken, into the possession and control of the petitioners for this writ.

It is provided by the act (St. 1872, *c.* 62, § 4) that "said town may issue coupon bonds, signed by the treasurer and countersigned by the chairman of selectmen of said town;" "and said town may sell said bonds at public or private sale, or pledge the same for money borrowed for the purposes of this act, upon such terms and conditions as it may deem proper."

It appears to me that the argument is very strong in favor of the position of the respondent, that it was the intention of the act that the creation and negotiation of the bonds, the custody and control of the funds arising therefrom, and the payment of liabilities incurred by the town in the execution of the work, should be conducted by the selectmen and treasurer, in the ordinary mode of conducting the financial affairs of the town. But conceding that the act would authorize the town to vote, as it did, that " the water commissioners be authorized to issue " the bonds and to negotiate them " in such amounts and at such times as they may deem best," it does not relieve the case of its difficulties.

In the first place, the commissioners, exercising such an authority, are but the agents of the town, acting in its name and behalf. They have no rights or interests of their own, and no public duty, except as the mere agents of the town. They are not entitled to maintain any action for the possession of the bonds otherwise than in the name and by the express authority of the town. *Bates* v. *Overseers of the Poor of Plymouth*, 14 Gray, 163. Much less can individual members of the board, although constituting a majority, maintain it against other members of the same board.

But the most serious objections are not matters of form. As I interpret the votes of the town, they do not authorize a majority of the commissioners to withdraw the bonds from the custody and control of the treasurer of the town, otherwise than by their negotiation and sale, or deposit in pledge. The statute, if it does not forbid any such proceeding, certainly contemplates that the treasurer will be the financial officer of the board. It is not Ranlett who is, by the explicit provisions of the act, made a member of the board ; but the treasurer of the town " *ex officio* "    So far

as he is concerned, it is not left for the town to change or contro. the appointment. This is a strong indication that it was intended by the Legislature that the treasury of the town should be the place of deposit and custody of the funds and the securities that might be created under the act. If not controlling as a matter of authority and right, it should have great weight in construing the votes of the town in this respect.

But I do not find, in the votes of the town, any indication of a purpose to commit its funds or securities to any other custody than its own treasury. The authority to negotiate the bonds was given to the board of commissioners as a body, of which its treasurer was one. The vote authorizing the board to exercise its powers " in such manner as a majority thereof shall determine," is expressly limited to the powers conferred by the second and third sections of the act, which do not relate to the bonds. Doubtless a majority may exercise powers thus conferred, unless specially restricted. But the authority given' is simply to negotiate the bonds, " in such amounts and at such times as they may deem best." Such a vote does not imply any different custody from what would result in case the negotiation were to be made by the selectmen, or any other agent appointed for the purpose by the town; especially when the treasurer is one of the officers charged with the negotiation.

It is said that the treasurer refuses to perform his duty, withholds the bonds, and obstructs the commissioners in the proper exercise of their authority to negotiate them. If so, he may undoubtedly be compelled to perform his duty in this particular by a *mandamus* properly brought. But the writ should command him to perform his duty as treasurer and commissioner; it should not deprive him of his office as commissioner, nor of his proper custody of the funds or securities of the town as treasurer.

The grounds, relied on for the support of these proceedings, we have before us only as they are recited in the writ. They are, in substance, only that the commissioners " had duly requested " the respondent " to sign the bonds and to deliver the same into the custody of said board," but the respondent " had refused and still refused so to do, claiming that in his capacity o.

town treasurer he was entitled to the custody and control of the bonds and of all the proceeds thereof." It is alleged that the commissioners were " greatly in need of money to meet their just obligations in that behalf contracted, and of said bonds for the purpose of raising said money as intended by said act."

To this it is well answered that such obligations are debts, not of the commissioners, but of the town, and to be paid by the town.

But taking this statement as equivalent to an averment that there is occasion or necessity for negotiating bonds to raise money for the purposes of the act, I submit that no ground is shown for this writ; because it is not shown that the respondent has done any act, or refused to do any act, whereby he has in any way obstructed the accomplishment of that purpose in any proper mode. By the demurrer his return is admitted to be true ; and it must be so taken by the court. He states " that he has, and had before the petition for this writ was made, signed the bonds in his official capacity, and is ready to deliver them to any person or persons when thereto instructed by the proper authority, on receiving the amount for which they shall have been negotiated or pledged by any one having authority to sell or pledge them." It is true he adds a denial of the authority of the commissioners to negotiate the bonds ; and of the town to give them such authority by its vote ; and avers that, " by the by-laws of the town, it is made the duty of the treasurer to negotiate all loans that may be made for the town, under the authority and sanction of the selectmen."

If this assertion in his return, or this denial of the authority of the commissioners, not disclosed in the writ itself as a cause for its maintenance, may nevertheless be availed of as a good ground for sustaining the writ for any purpose, it should go no farther than a direction to the respondent to hold the bonds subject to delivery upon the order of the board of commissioners upon sale or pledge thereof by them, receiving the proceeds of such sale or pledge in return.

But that is not what these petitioners seek, nor what the writ, as issued, directs. The complaint, as recited in the writ, discloses nothing but a controversy in regard to the proper custody and

control of the bonds and of the proceeds thereof ; the respondent contending, and as it seems to me with good ground, that their custody should be with him, in his double capacity of town treasurer and member of the board of commissioners, (rather than with any part of the commissioners less than the whole board;) the petitioners seeking, by virtue of constituting a majority of the commissioners, to deprive him of that custody. The question whether the commissioners might make sales of bonds and direct their delivery is not presented by the petitioners, and it is not asserted that they have been prevented from making such sales by any acts or refusals of the respondent, nor that they have attempted to make such sales ; nor does it appear that, in order to effect sales, it is necessary that the bonds should be taken from the custody of the respondent and placed in the hands of other members of the same board. The writ is made use of, not to compel the respondent to do all such acts as may be necessary to enable the board of water commissioners to negotiate the bonds, and thus provide funds with which the town may meet its liabilities contracted by them, but to transfer the custody and manual control of the bonds from the respondent to some other custodian to be designated by the petitioners ; and this on the ground that they, as a majority of the board, have an absolute right to control the disposition and custody of them. This would seem to me to be an abuse of the writ in any case ; but all the more so in view of the fact that the respondent alone is made by the statute a member of the board, for the sole reason that he is treasurer of the town, for the time being.