CHARLES H. McGLUE vs. COUNTY COMMISSIONERS OF ESSEX.

Essex.     September 26, 1916. — October 5, 1916.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Constitutional Law*, Apportionment of representation. *House of Representatives. Essex County Commissioners. Mandamus.*

A report of the Essex County commissioners, made under art. 21 of the Amendments to the Constitution, of the division of that county into representative districts and the apportionment among those districts of the representatives allotted to them by St. 1916, c. 270, § 24, can be called in question in the courts only by the Attorney General representing the public or by one who shows that his constitutional rights have been impaired.

Accordingly a voter in a legislative district of that county against which no unjust discrimination has been made cannot maintain a petition for a writ of mandamus to set aside such a report of the county commissioners on account of alleged discriminations against other districts.

Upon a petition by a voter of legislative district No. 14 of Essex County against the county commissioners of that county for a writ of mandamus to set aside their report apportioning the legislative representation in that county, it appeared that district No. 14 as defined by the commissioners comprised wards 3 and 4 of Lynn and the town of Nahant and that three representatives were apportioned to the district, giving one representative for each 3,414 voters, which was only 174 voters more than the unit of representation for the whole county, and that the county contained twenty-seven towns, which could not be divided, and seven cities composed of forty-six wards, which could not be divided, and it was *held*, that the petition must be dismissed; because the excess of 174 voters above the representative unit did not show that the petitioner's constitutional rights had been violated.

RUGG, C. J.   This is a petition by a voter in Essex County against the county commissioners of that county for a writ of mandamus to set aside the report of the division of Essex County into representative districts and the apportionment among those districts of the thirty-one representatives allotted to that county by St. 1916, c. 270, § 24, made by the county commissioners under art. 21 of the Amendments to the Constitution.*   The ground alleged in the petition is that by the report the constitutional right of the petitioner "to vote for as many representatives, as

* The case was heard by *De Courcy*, J., who at the request of the parties reported it for determination by the full court.

nearly as may be, as the voters in the other districts of" the county has been violated. The petitioner attacks numerous districts of the division and the apportionment of representatives thereto.

The right of the petitioner to invoke the aid of the court to set aside this report of division and apportionment is challenged by the commissioners. It is a general principle that no one can question the constitutionality of a public act except one whose rights are impaired thereby. It is elementary that courts have no power to inquire into the validity of public laws by a proceeding brought directly for that purpose. It is only when some person invokes the aid of the judiciary in resisting the operation of such laws to the harm of his liberty, his rights or his property, that the objection of unconstitutionality can be raised. Only those who have a right affected can question the validity of an act. Strangers have no standing in the courts upon such matters. This is manifestly a sound principle. It is a part of the very fabric of our law. It was declared early by this court. It has been adhered to consistently. It has been adopted generally. It would be unfortunate if volunteers and strangers could institute at will proceedings to attack the constitutionality of public acts. *Wellington, petitioner,* 16 Pick. 87, 96. *Hingham & Quincy Bridge Corp.* v. *County of Norfolk,* 6 Allen, 353, 357. *Pearsons* v. *Ranlett,* 110 Mass. 118, 126. *Brewster* v. *Sherman,* 195 Mass. 222, 224. *Attorney General* v. *Provident Institution for Savings,* 201 Mass. 23, 25. *Lampasas* v. *Bell,* 180 U. S. 276. *Red River Valley Bank* v. *Craig,* 181 U. S. 548, 558. *Hatch* v. *Reardon,* 204 U. S. 152, 160. *Jeffrey Manuf. Co.* v. *Blagg,* 235 U. S. 571, 576. *Louisville & Nashville Railroad* v. *Finn,* 235 U. S. 601, 610. See cases collected in 6 R. C. L. Constitutional Law, §§ 87 *et seq.* and in 8 Cyc. 787.

The county commissioners in making a division and apportionment are officers created by the Constitution. They perform duties imposed by the Constitution. Their report regulates in vitally important particulars the election of the representatives of the people to the more numerous branch of the Legislature for a period of ten years. Every reasonable presumption is made in favor of such a report. It stands unless unmistakably and palpably contrary to the requirements of the Constitution. It manifestly is a public act touching a fundamental aspect of the Constitution. To question its validity raises a constitutional

question. Any one who assails such a report in a judicial pro-
ceeding must show that his rights have been thereby infringed
before he can be heard.

The petitioner's constitutional right is that the division and
apportionment shall be so made that his vote shall be accorded
the weight to which it is entitled on the basis of an apportionment
of representatives in proportion as nearly as may be to the number
of legal voters in the county. If his vote is given its due weight
on the footing of an equal division, his right to vote has not been
reduced or impaired. Then no discrimination has been practiced
against him. In such a case no division and apportionment
could be made under the Constitution which would leave him,
as to voting, in any substantially different position, or give to his
vote any greater power or any less power in the election of repre-
sentatives. If his right to become a candidate for public office
is to be considered, the result is the same. The number of
voters requisite for his nomination and election would be the
correct number upon the principle of equality. A division thus
made would deal with him justly on the principle of equality
secured by the Constitution even though there might be defects
as to other districts. No right of his would be infringed. He
would have no right to complain of other discrimination or in-
equalities in the report, because they would not harm him; and
their correction would not alter the weight of his vote when
cast for other candidates, or the number of the votes of his fel-
lows necessary to nominate or elect him if he should become a
candidate. A violation by the commissioners of their constitu-
tional duty in any material respect may be called in question in
the courts at the instance of the Attorney General as represent-
ing the public. It can be so questioned also in an action by
any one who shows that his constitutional rights have been im-
paired. But it can be so questioned by no one else. No matter
how great may be the discrimination or disparity worked by
the division and apportionment in other parts of the county, the
petitioner has no right to attack the report in the courts unless
his constitutional rights are violated.

Manifestly a legal voter in a representative district containing
exactly the number of legal voters, to which one representative
ought to be and has been assigned in order that the apportionment

be precisely equal throughout the county, would not be harmed or affected in his constitutional voting power for members of the House of Representatives by inequalities and disparities elsewhere. There would be secured to him the exact voting right to which he was entitled under the Constitution. His vote would have the accurate weight to which it was entitled, because he would be in a district to which exact justice had been done in the apportionment. A voter in a district where the ratio between voters and representative was lower than the representative unit for the county, that is, where a smaller number of voters than the unit has been given a representative, would suffer no harm. Only a voter living in a district where that ratio is higher than the right ratio, that is, where a larger number of voters than the unit has been given a representative, has a standing to question in court the constitutionality of a division and apportionment, because he has suffered injury in his constitutional right. Such voter lives in a district against which discrimination is made.

These principles were not discussed in either *Attorney General v. Apportionment Commissioners*, 224 Mass. 598, or *Donovan v. Apportionment Commissioners*, *ante*, 55, because the Attorney General appeared as representing the public interest in the first case and because in both cases each of the individual petitioners for mandamus was a voter in a district against which a manifest discrimination had been made, so that plainly each had suffered a direct injury in his voting power as secured by the Constitution.

The rights of the petitioner must be settled in accordance with these principles. The petitioner is a legal voter in ward 4 of the city of Lynn, which is included within the fourteenth district established by the report. He has a standing to attack the report of the commissioners by showing that discrimination has been made against that district, or that for any reason his right as a voter is injuriously affected. He has no standing to ask that the report be set aside because voters in other districts have been injured in their constitutional rights. Therefore, we cannot consider the apportionment as to other districts nor decide whether as to some of them a different result might be reached, because such matters are not before us.

District No. 14 comprises wards 3 and 4 of the city of Lynn and the town of Nahant. It contains 10,243 legal voters. To it are

apportioned three representatives. The ratio is one representative to each 3,414 legal voters. Thirty-one representatives were apportioned to Essex County, which contained 100,445 legal voters. By dividing the number of legal voters in the county by the number of representatives the representative unit or ratio of representation to legal voters is found to be 3,240 for the county. A comparison between 3,414, the ratio of legal voters to representative in District No. 14, and 3,240, the ratio for the county, shows a disparity against District No. 14 of 174.

Essex County contains twenty-seven towns and seven cities, the latter being divided into forty-six wards. There are thus seventy-three territorial units, which cannot be subdivided and which must be used in making the division and apportionment. The largest number of legal voters in any of the towns and wards, as shown by the census, was 5,077 in Ward 3 of Lynn, and the smallest, 190 in the town of Boxford. The fractions of the representative unit or ratio for the county, shown by the number of legal voters in the several towns and wards, are in many instances large, but range to others comparatively small.

The county commissioners were required under the Constitution to divide the county into representative districts of contiguous territory without dividing a town or a ward of a city, and not allotting more than three representatives to any one district, in such way as to apportion the thirty-one representatives "equally, as nearly as may be, according to the relative number of legal voters in the several districts." These constitutional regulations are inflexible and inviolable. They must be complied with. But they are not minute as to particulars. They do not govern details of conduct.

The task confronting the commissioners involved some complexity. The grouping of so many towns and wards into districts of contiguous territory in such way that each shall approximate as nearly as possible to 3,240 voters for each of thirty-one representatives was by no means simple. Within the broad lines established by the Constitution there is room for diversities of opinion as to the proper arrangement of towns and wards into districts with one, two or three representatives, in order to reach as nearly as is reasonably practicable the unit or ratio of representation. After conscientious effort there may be instances of

considerable excess or deficiency in some districts as compared with the unit. Exact equality would be impossible.

An excess of 174 above the representative unit under these circumstances does not show that the petitioner's rights under the Constitution have been violated. Possibly other combinations of towns and wards might have been made, which would have approached closer to exact equality; but this disparity is comparatively insignificant.

We do not understand the petitioner to contend that the report is invalid as to his own district. At the argument he disclaimed any personal interest. But however that may be, it seems too plain for serious discussion that there is no discrimination where the disparity is so small under the conditions here disclosed.

This is not an instance where fair-minded men can entertain no rational doubt that there is a grave, unnecessary and unreasonable inequality of representation by discriminating against District No. 14. It is not a wide and bold departure from the constitutional requirement. *Attorney General* v. *Apportionment Commissioners,* 224 Mass. 598. *Donovan* v. *Apportionment Commissioners, ante,* 55. *In re Baird,* 142 N. Y. 523. *State* v. *Campbell,* 48 Ohio St. 435. *People* v. *Carlock,* 198 Ill. 150. *State* v. *Weatherill,* 125 Minn. 336, 342.

The differences between the case at bar and the two cases against the Suffolk County apportionment commissioners cited above are too plain to require statement.

*Petition dismissed.*

The case was argued at the bar in September, 1916, before *Rugg,* C. J., *Loring, Braley, Pierce, & Carroll,* JJ., and afterwards was submitted on briefs to all the justices except *De Courcy,* J.

*C. H. McGlue, pro se.*

*S. Parsons, (C. D. C. Moore* with him,) for the respondents.