TRUSTEES OF SMITH COLLEGE *vs.* BOARD OF ASSESSORS
OF WHATELY.

Suffolk.  December 11, 1981. — April 9, 1982.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Taxation*, Real estate tax:  exemption.  *Constitutional Law*, Equal Rights
  Amendment.

Where an admittedly charitable educational institution claimed an ex-
  emption from real estate taxation on certain land pursuant to G. L.
  c. 59, § 5, Third, the board of assessors of the town in which the land
  was located lacked power to challenge the constitutional validity of
  the exemption on the basis that the institution admitted only students
  of one sex to its degree-granting programs.  [768-771]

APPEAL from a decision of the Appellate Tax Board.

*Edward W. Pepyne, Jr.*, for the Board of Assessors of
Whately.

*Robert W. Meserve (Joanne E. Barker* with him) for the
taxpayer.

*Francis J. Vaas, George Marshall Moriarty, & John H.
Mason*, for Mount Holyoke College & others, amici curiae,
submitted a brief.

LIACOS, J.  The board of assessors of Whately (assessors)
has appealed from a decision of the Appellate Tax Board
(board) holding that certain unimproved property owned
by the Trustees of Smith College was exempt from real
estate taxation for the fiscal year 1979, pursuant to G. L.
c. 59, § 5, Third.[1]

---

[1] General Laws c. 59, § 5, Third, as amended through St. 1977, c. 992,
§ 2, provides, in pertinent part, a tax exemption for "real estate owned by
or held in trust for a charitable organization and occupied by it or its of-
ficers for the purposes for which it is organized."

The facts underlying this appeal are as follows. Some time in the 1970's Smith College, located in Northampton, constructed an astronomical observatory in Whately, where it owns approximately 200 acres of land. The two parcels in question, totalling about eighty-six acres, are vacant land kept in that state, the board found, "to ensure that there would be sufficient vacant land surrounding the observatory for protection against development and consequent interference from lights."

The assessors assessed the land and sent tax bills to Smith College in January, 1979. Smith College paid the assessed taxes in full in a timely manner and also filed timely applications for abatement for the two parcels on the ground that both parcels were exempt pursuant to G. L. c. 59, § 5, Third. The applications were denied, and Smith College seasonably appealed to the board under the formal procedure.

A number of issues were raised before the board by both parties. The assessors argued (1) the land in question was not occupied for the educational purposes of Smith College; (2) even if the land was so occupied, Smith College was not entitled to an exemption because it engaged in sex discrimination in violation of Federal and State law. Smith College responded, inter alia, by arguing that (a) the land was occupied for educational purposes; (b) the assessors had no standing to raise the sex discrimination issue; (c) there was no violation of State or Federal law; (d) no State action was involved in the allegedly discriminatory admissions policy. The board did not reach the question of the assessors' standing, but concluded that the land was exempt from real estate taxation under G. L. c. 59, § 5, Third.

The notice of appeal filed by the assessors set forth two issues for our attention. G. L. c. 58A, § 13. The first issue raised by the notice of appeal is whether the board committed error in finding that the property in question is occupied by the taxpayer for the charitable purposes for which it is organized. The assessors also claimed review of a ruling by the board that a private undergraduate educational institu-

tion, otherwise qualified for an exemption from taxation under G. L. c. 59, § 5, Third, but admitting students of only one sex for matriculation, is entitled to such exemption for its property. The assessors have neither briefed nor argued the first claim of error, and we need not consider it; they argue no question of Federal law before us, and hence this issue is also waived. Mass. R.A.P. 16 (a) (4), as amended, 367 Mass. 919 (1975). The only issue the assessors thus purport to present to us is whether a private educational institution which admits only students of one sex to its degree-granting program is precluded from receiving a tax exemption under G. L. c. 59, § 5, Third, by virtue of the Equal Rights Amendment (art. 106) to the Massachusetts Constitution.[2] Additionally, Smith College argues the question whether the assessors have "standing" to raise this issue.

In rejecting the assessors' claim that Smith College has failed to "occupy" the land in question for educational purposes, the board found, and correctly so, that "the appellants acted in good faith and not unreasonably in acquiring and holding the subject parcels for providing protection for the observatory." *Assessors of New Braintree* v. *Pioneer Valley Academy, Inc.*, 355 Mass. 610, 616 (1969). *Assessors of Dover* v. *Dominican Fathers Province of St. Joseph*, 334 Mass. 530, 540-541 (1956). *Massachusetts Gen. Hosp.* v. *Somerville*, 101 Mass. 319, 322 (1869). Similarly, the board found that "[t]he character of the College as an educational institution primarily for women has been consistently maintained from the time of its establishment in 1871 to the present," and held that an "educational institution of a public charitable nature," is a charitable organization. *Cummington School of the Arts, Inc.* v. *Assessors of Cummington*, 373 Mass. 597, 602 (1977). See *Worcester* v. *New England Inst. & New England School of Accounting, Inc.*, 335 Mass. 486,

---

[2] In 1976 the people approved art. 106 of the Amendments to the Constitution of the Commonwealth, which amended art. 1 of the Declaration of Rights to read, in pertinent part: "Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin."

489 (1957). Such a finding was clearly warranted. See *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 384-388 (1937). The assessors did not dispute this finding before the board, nor do they question it here. Instead, they asked the board, and ask us, to resolve an alleged conflict between G. L. c. 59, § 5, Third, and the Equal Rights Amendment to the Massachusetts Constitution. Such a request was beyond the power of the assessors to raise and of the board to grant.

A charitable organization is defined in G. L. c. 59, § 5, Third, as amended through St. 1977, c. 992, § 2, as either "(1) a literary, benevolent, charitable or scientific institution or temperance society incorporated in the commonwealth," or "(2) a trust for literary, benevolent, charitable, scientific or temperance purposes if it is established by a declaration of trust executed in the commonwealth." There is no specific language in the statute whereby an institution satisfying one or both of these definitional prerequisites could be denied status as a charitable organization. Indeed, a literal reading of the statute suggests that there is a limit to the inquiries as to charitable status which may be made in abatement proceedings. By such a reading, both the assessors and the board are foreclosed from doing more than requiring certification from the appropriate State body regarding the organization in question. Compare *DeCenzo* v. *Assessors of Framingham*, 372 Mass. 523, 526-527 (1977) (assessors have no discretion as to blind person exemption under G. L. c. 59, § 5, Thirty-seventh, or as to veterans' exemption under § 5, Twenty-second), with *Assessors of Saugus* v. *Baumann*, 370 Mass. 36 (1976) (hardship exemption under G. L. c. 59, § 5, Eighteenth, solely within discretion of assessors).

We find no authority vested in the assessors, by the statutes defining their powers and duties, to raise a constitutional challenge of the kind they seek to assert by this appeal. See, e.g., G. L. c. 59, §§ 21, 23, 23A, 23B, 43, 51, 52, 59, 60, 74, 76, 86. Pursuant to G. L. c. 59, § 86, the assessors are required to send to the Commissioner of Reve-

nue an annual report of property exempted from taxation by virtue of G. L. c. 59, § 5, Third. If there is to be a challenge to the constitutional validity of granting an exemption to real estate owned by an admittedly charitable or educational institution because of an alleged violation of State law, such a challenge would have to be made by the Attorney General under G. L. c. 12, §§ 8, 8A-8M, or possibly by the Commissioner acting under the powers granted by G. L. c. 58, §§ 1, 1A, 4, 4A.[3]

We hold that once the local assessors and the board have determined the issue whether a taxpayer qualifies for exemption within the language of G. L. c. 59, § 5, Third, their task is concluded. Cf. *Assessors of Provincetown* v. *Commissioner of Revenue*, 13 Mass. App. Ct. 225, 227 (1982). Consequently, we need not address the other questions argued under art. 106, as they are not properly before us.

The decision of the Appellate Tax Board is affirmed.

*So ordered.*

---

[3] We need not decide the issue whether, as Smith College urges, the only appropriate official to raise such a question is the Attorney General. See *Trustees of Dartmouth College* v. *Quincy*, 331 Mass. 219, 225 (1954); *Dillaway* v. *Burton*, 256 Mass. 568, 573 (1926). It suffices to conclude that local assessors have no such power.