TOWN OF BROOKLINE & others[1] vs. THE GOVERNOR & others.[2]

Suffolk. January 11, 1990. - May 14, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Statute*, Appropriation of money, General law. *Commonwealth*, Financial matters. *Constitutional Law*, General court, Governor, Appropriation of money, Expenditure of money. *Governor*.

The Governor had no authority under G. L. c. 29, §§ 9B and 9C, to withhold, pending receipt of sufficient revenue, the distribution of certain local school aid funds which had been appropriated in the fiscal year 1990 budget, St. 1989, c. 240, § 2, line item 7061-0008. [378-381] LIACOS, C.J., concurring.

Section 6 of St. 1989, c. 240, the general appropriation act for 1990, lawfully limited distribution of certain State lottery proceeds to cities and towns during the 1989 and 1990 fiscal years. [382-384] LIACOS, C.J., concurring.

In an action by numerous municipalities and their officials, both in their official capacities and as residents and taxpayers of their respective communities, the plaintiffs presented no basis for judicial action under G. L. c. 29B, which provides for "a general appropriation bill which shall constitute a balanced budget for the commonwealth." [384-385] LIACOS, C.J., concurring.

---

[1] A majority of the board of selectmen of Brookline; the town administrator of Brookline; the members of the school committee of Brookline; and numerous other municipalities and the members of the boards of selectmen of the towns and the mayors of the cities, in their official capacities and as residents of and taxpayers in their respective communities.

The judge later allowed a motion to add plaintiffs which, the plaintiffs say, has raised to 120 the number of cities and towns that are plaintiffs. The members of the boards of selectmen of those towns and the mayors of those cities are plaintiffs in their official capacities and as they are residents of and taxpayers in their respective municipalities.

[2] The Treasurer and Receiver General, the Commissioner of Education, and the Commissioner of Revenue.

CIVIL ACTION commenced in the Superior Court Department on August 2, 1989.

The case was reported to the Appeals Court by *Richard S. Kelley*, J. The Supreme Judicial Court transferred the case on its own initiative.

*David Lee Turner*, Town Counsel (*Sara Holmes Wilson & George F. Driscoll, Jr.*, with him) for the plaintiffs.

*Peter Sacks*, Assistant Attorney General, for the Governor.

The following submitted briefs for amici curiae:

*William L. Patton & Lorraine A. White*, for Massachusetts Taxpayers Foundation.

*Lorraine A. White* for the town of Andover.

*Louis A. Rizoli & Elaine M. Farrell*, for Massachusetts House of Representatives.

*Daniel J. Bailey, Jr.*, Town Counsel, *Roderick MacLeish, Jr., & John W. Bishop, Jr.*, for the town of Weymouth & another.

WILKINS, J. The court holds that the Governor had no authority under G. L. c. 29, §§ 9B and 9C (1988 ed.), to withhold $210,000,000 in local school aid funds, commonly called Chapter 70 aid, appropriated in the fiscal year 1990 budget. St. 1989, c. 240, § 2, line item 7061-0008. We further hold, on an entirely separate issue, that § 6 of St. 1989, c. 240, lawfully limits distributions of certain State lottery proceeds to cities and towns during the 1989 and 1990 fiscal years.

A judge of the Superior Court reported the case to the Appeals Court on a statement of agreed facts. We transferred the case to this court on our own motion.

1. In its fiscal year 1990 general appropriation act (St. 1989, c. 240), the Legislature appropriated funds for Chapter 70 school aid (line item 7061-0008) to be distributed to cities and towns. Purporting to act pursuant to G. L. c. 29, § 9C, the Governor has withheld $210,000,000 of the Chapter 70 aid appropriation from distribution, pending receipt of sufficient revenues. We conclude that the funds appropriated by line item 7061-0008 are not subject to reduction pursuant to G. L. c. 29, § 9C.

Line item 7061-0008, under the headings of Department of Education, Board of Education and Commissioner's Office, appropriated more than $1,218,000,000 for "school aid to cities, towns, regional school districts, counties maintaining agricultural schools and independent vocational schools to be distributed pursuant to the provisions of section three of this act." Section 3 in turn recites that the "amounts to be distributed from item 7061-0008 of [§ 2] are hereby deemed to be in full satisfaction of the amounts due under" G. L. c. 70, §§ 3, 6, and 7. Section 3 also states that "[n]othwithstanding the provisions of any general or special law to the contrary, the total amounts to be distributed and paid to each city, town" and other political subdivision from item 7061-0008 of § 2 of the act "shall be [as] set forth" in the list included in this section. That list recites the precise dollar amount of 7061-0008 Chapter 70 aid to be distributed to each municipality and political subdivision. Section 3 also provides that the State Treasurer shall make no payments to cities and towns pursuant to § 3 after November 30 of the fiscal year until he receives (1) certification from the Commissioner of Revenue concerning the prior year's financial reports submitted pursuant to G. L. c. 44, § 43 (1988 ed.), and (2) certification from the Commissioner of Education of acceptance of the end of year pupil and financial report submitted pursuant to G. L. c. 72, § 3 (1988 ed.). Section 4 of St. 1989, c. 240, directs the State Treasurer to make "two equal payments" of various assistance programs to cities and towns during each fiscal year.

What these sections of the annual appropriation act provide is a specific amount of money for school aid to each city and town, in lieu of the amounts provided for in Chapter 70, notwithstanding the provisions of any general or special law to the contrary. The State Treasurer must pay to each city and town its specific amount in two equal payments during the fiscal year, but he may do so only after certain certifications have been delivered. These provisions are self-contained guidelines for the furnishing of Chapter 70 school aid in the 1990 fiscal year. They bar the application of G. L. c. 29,

§§ 9B and 9C, or any other general or special law, to the determination of the amounts that must be paid as Chapter 70 aid. No party argues that § 3 of St. 1989, c. 240, is unlawful in any aspect because it is an improper provision for an annual appropriation act.

Even if § 3 did not bar the application of §§ 9B and 9C to the appropriation for Chapter 70 aid, those sections do not authorize the Governor to reduce Chapter 70 local aid amounts set forth in § 3 of the 1990 fiscal year appropriation act. Section 9C of G. L. c. 29, which is set forth in the margin,[3] allows the Governor to reduce allotments under § 9B, in certain circumstances, when available revenues during a fiscal year will be insufficient to meet authorized expenditures. Section 9B, the first part of which is set forth in the margin,[4]

---

[3]General Laws, c. 29, § 9C (1988 ed.), provides: "Whenever, in the opinion of the commissioner of administration, available revenues as determined by him from time to time during any fiscal year under the provisions of section five B will be insufficient to meet all of the expenditures authorized to be made from any fund, whether by appropriation or distribution, he shall immediately notify the governor and the house and senate committees on ways and means of the amount of such probable deficiency of revenue and the governor, within fifteen days of such notification, shall reduce allotments under section nine B or he shall submit to the general court specific proposals to raise additional revenues by a total amount equal to such deficiency.

"As an alternative to the submission of such proposals to raise additional revenues and to the extent funds are available, the governor may recommend an appropriation equal to such deficiency from the Commonwealth Stabilization Fund in the manner provided in section two H."

[4]General Laws c. 29, § 9B (1988 ed.), provides, in pertinent part: "Any monies made available by appropriation or otherwise, to state agencies under the control of the governor or a secretary, but not including the courts, the office of the governor, or the office of the lieutenant governor, shall be expended only in such amounts as may be allotted as provided in this section. The governor shall from time to time divide each fiscal year into allotment periods of not less than one month nor more than four months. The governor or the commissioner when designated in writing by the governor shall allot to each such state agency the amount which it may expend for each such period out of the sums made available to it by appropriation or otherwise. The amount so allotted initially by the governor or the commissioner shall be equal to an amount calculated in accordance with the following formula: the annual sum available for expenditure divided by twelve multiplied by the number of months in the allotment period, unless the full legislative objective of an appropriation would be ac-

is the crucial statutory provision here. It describes which monies or allotments the Governor may reduce under § 9C. These monies or allotments are funds "made available by appropriation or otherwise, to state agencies under the control of the governor or a secretary." Section 9B also directs the Governor to divide each agency's funds into allotment periods. In this way, it is generally expected that an appropriation will be expended proportionately over the course of a fiscal year.

The short answer to the question whether the Governor may use § 9C to reduce amounts appropriated by line item 7061-0008 is that the school aid funds appropriated by that line item, and assigned in specific amounts to cities and towns by § 3 of the fiscal year 1990 appropriation act, are not "made available" to any State agency "under the control of the governor or a secretary." Neither the requirement that the Commissioners of Revenue and Education must certify certain information before the State Treasurer may distribute those school aid funds, nor the fact that the appropriation appears under the heading "Department of Education" makes those school aid funds available to any State agency described in § 9B. Moreover, the provision in § 4 of St. 1989, c. 240, that the school aid funds be distributed twice a year is inconsistent with the allotment provisions described in § 9B.

The provision in § 9C concerning reductions in § 9B allotments obviously has no application to amounts that are not subject to allotment, and amounts not available to agencies under the control of the Governor or one of his secretaries simply are not subject to allotment.[5]

---

complished, without amendment, by a lesser allocation than that required by the formula."

[5]Because we rule that the Governor had no statutory authority to reduce the line item 7061-0008 amounts (appropriated in lieu of Chapter 70 aid), we need not address the plaintiffs' various constitutional arguments, including (1) a challenge to § 9C as an unconstitutional delegation of legislative authority in violation of the separation of powers principles expressed in art. 30 of the Massachusetts Declaration of Rights and (2) a challenge to § 9C's validity because it was adopted as an outside section of a general appropriation act (St. 1976, c. 283, § 3F). If § 9C had a dubious

2. The plaintiffs claim that § 6 of St. 1989, c. 240, which purports to limit the distribution of State lottery funds as local aid in fiscal years 1989 and 1990, is unlawful. Their argument is that § 6, an outside section of the fiscal year 1990 general appropriation act, attempts to enact general legislation and that a general appropriation act may not lawfully be used for that purpose. We need not now decide whether an outside section not related to an appropriation may constitutionally be included in a general appropriation act because we conclude that § 6 is sufficiently related to the subject of the appropriation of funds that, even if the premise of the plaintiffs' argument is correct, § 6 is lawful.[6] For the same reason, we need not decide whether G. L. c. 29, § 7L (1988 ed.), would apply to invalidate a nonappropriation-related outside section of a general appropriation act.[7]

---

birth, it may have been legitimized by its amendment in 1986 (St. 1986, c. 488, § 13). We need not address the defendants' argument that the plaintiffs lack standing to challenge the constitutionality of § 9C.

Certain amici have raised other arguments challenging the Governor's action with specific reference to the time of his action in relation to other steps taken in the budget process. In a case such as this, we normally would not pass on issues that a party has not raised and argued or adopted by reference to an amicus brief. In any event, resolution of the arguments of certain amici is not necessary because of our decision, on other grounds, that the Governor lacked authority to withhold local aid funds.

The constitutional issues would be worthy of attention, however, to the extent that a construction of § 9B and § 9C that avoids those issues would be appropriate to resolve any ambiguity in those sections. See *Adamowicz* v. *Ipswich*, 395 Mass. 757, 763-764 (1985). We need not resort to that principle of statutory construction because this case presents no statutory ambiguity concerning the Governor's authority.

[6]The Justices have noted the question whether such separable provisions may properly be included in a general appropriation bill. See *Opinion of the Justices*, 384 Mass. 820, 826 (1981). The court has never decided the question.

[7]General Laws c. 29, § 7L, states that a "law making an appropriation for expenses of the commonwealth [including local aid] shall not contain provisions on any other subject matter." We have expressed doubt whether § 7L can restrict a Legislature and Governor that wish to do otherwise. *Massachusetts Coalition for the Homeless* v. *Secretary of Human Servs.*, 400 Mass. 806, 816 (1987). Because we conclude that, even if applicable, § 7L does not forbid a provision such as St. 1989, c. 240, § 6, we need not resolve the question of § 7L's effectiveness.

Each quarter the balance in the State Lottery Fund, after deduction for expenses and prizes, is credited to the Local Aid Fund, established under G. L. c. 29, § 2D (1988 ed.). G. L. c. 10, § 35 (1988 ed.). Under G. L. c. 58, § 18C (*a*) (1988 ed.), the State Treasurer quarterly must distribute amounts credited to the Local Aid Fund to cities and towns "without further appropriation." It is thus apparent that, under the General Laws, the Legislature has appropriated the net proceeds of the State lottery to cities and towns through the Local Aid Fund.

Section 6 of St. 1989, c. 240, the second paragraph of which is quoted in the margin,[8] if lawful, eliminated the planned automatic distribution of certain lottery funds to cities and towns for fiscal years 1989 and 1990. Under § 6, certain amounts of lottery funds in excess of $306,000,000 in each year are to be treated differently from the manner in which the General Laws provide. In modifying the normal appropriation of lottery funds made by the General Laws, the Legislature engaged in a process that directly concerns the appropriation of funds for local aid. See *Slama* v. *Attorney Gen.*, 384 Mass. 620, 625-626 (1981), and cases cited; G. L. c. 29, § 1 (1988 ed.), defining "appropriation" for the

---

[8]"Nothwithstanding the provisions of any general or special law to the contrary, the lottery distribution to cities and towns for the fiscal year ending June [30, 1989] shall not exceed [$306,000,000]; provided, further, that the lottery distribution to cities and towns for the fiscal year ending June [30, 1990] shall also not exceed [$306,000,000]; provided, further, that the first [$20,000,000] available for transfer from the Lottery Fund to the Local Aid Fund in the fiscal year ending June [30, 1990] shall be transferred to a retained revenue account within the executive office for administration and finance and shall be expended for the purposes of item 1599-3850 of section two C; provided, further, that any amount in the balance of the Lottery Fund at the end of such fiscal years shall be transferred to the Local Aid Fund and be available for lawful appropriations allowed from the Local Aid Fund; and provided, however, if the total combined amount for said fiscal years so transferred to the Local Aid Fund for appropriation exceeds [$34,000,000], any amount in excess of [$34,000,000] shall be distributed by the treasurer from the Local Aid Fund in accordance with the provisions of clause (c) of section thirty-five of chapter ten of the General Laws, in a manner proportional to said lottery distribution of said funds for the fiscal year ending June [30, 1989]."

purpose of G. L. c. 29; G. L. c. 29, § 7L, which, in turn, includes local aid within the permissible range of subjects to be included in an appropriation law. Cf. *Massachusetts Coalition for the Homeless* v. *Secretary of Human Servs.*, 400 Mass. 806, 816-817 (1987) (fixing the aid for dependent children standard of need in annual budget "is not unambiguously a provision on a 'subject matter' other than an appropriation"). Because § 6 relates to an appropriation, we need not consider the plaintiffs' constitutional and statutory challenges to § 6.[9]

We do not understand the defendants to argue that the plaintiffs lack standing to challenge § 6 on the ground that § 6 violates § 7L. The defendants do challenge the plaintiffs' standing to argue that § 6 could not constitutionally replace the local aid distribution procedure described in the General Laws. We have answered this challenge unfavorably to the plaintiffs, and, therefore, the standing question (which is not a jurisdictional one) need not be resolved.[10]

3. The plaintiffs urge us, in a generalized argument, to enforce G. L. c. 29B (1988 ed.), which provides in part for a "general appropriation bill which shall constitute a balanced budget for the commonwealth" (G. L. c. 29B, § 2). Section 7 of G. L. c. 29B authorizes this court, and the Superior Court, to enforce its provisions on the petition of twenty-four taxable inhabitants, not more than six of whom shall be from any one county.

---

[9]The challenge to § 6 as not involving an appropriation (or as involving subject matter other than an appropriation) is particularly unpersuasive in the context of St. 1989, c. 240, because in other portions of that act the Legislature provided for local aid that could have been restricted to achieve the local aid result it sought through § 6.

[10]It does appear that the question whether local aid funds should be distributed pursuant to § 6, or in total disregard of § 6, is one that directly and specially affects all the plaintiff municipalities. If the plaintiff municipalities lack standing to challenge the lawfulness of § 6, no one else is likely to have any greater standing to do so. We would be reluctant to tolerate a situation in which allegedly unconstitutional conduct would be free from judicial scrutiny even on the request of an entity most directly affected by the alleged unlawful conduct. Cf. *LaGrant* v. *Boston Hous. Auth.*, 403 Mass. 328, 330-331 (1988).

The plaintiffs have made no specific proposal for judicial action under G. L. c. 29B. The defendants properly question the right of the Legislature and Governor to restrict their respective successors through G. L. c. 29B. The defendants also suggest that any order under G. L. c. 29B would present art. 30 (separation of powers) questions. We put aside the constitutional issues and simply state that the plaintiffs have failed to present an adequate basis for judicial action under G. L. c. 29B.

4. A judgment shall be entered in the Superior Court declaring that (1) the procedures set forth in G. L. c. 29, §§ 9B and 9C, did not authorize a reduction in the amounts of Chapter 70 aid provided in St. 1989, c. 240; (2) Statute 1989, c. 240, § 6, lawfully authorized the Legislature to limit the distributions to cities and towns from the proceeds of the State lottery during the 1989 and 1990 fiscal years; and (3) the plaintiffs are not entitled to relief under G. L. c. 29B.

*So ordered.*

LIACOS, C.J. (concurring). Although I join in the court's substantive interpretation of the relevant statutes, I write separately because I believe it may be appropriate to comment on some issues not fully discussed by the court.

The plaintiffs contend that:

1. The Governor's withholding of $210,000,000 of Chapter 70 aid appropriated for fiscal year 1990 is an invasion of the General Court's authority to appropriate funds for a specific purpose;

2. If G. L. c. 29, § 9C (1988 ed.), authorizes the Governor's action, the statute constitutes an unconstitutional delegation of the legislative power to appropriate, and a circumvention of the General Court's power to override a veto;

3. Section 9C may be construed in a manner which removes all doubts about its constitutionality;

4. If the power to withhold appropriated funds may be delegated by the General Court, that delegation must contain appropriate standards, and § 9C does not;

5. Chapter 70 aid is not subject to the allotment procedures under G. L. c. 29, § 9B (1988 ed.);

6. Section 9C was unconstitutionally adopted as an outside section in an earlier general appropriation act (St. 1976, c. 283, § 3F), is invalid, could not bind future legislative sessions, and may not serve as a basis for the Governor's withholding of Chapter 70 aid;

7. The Governor's use of § 9C to allocate Chapter 70 aid on a per capita basis is an unconstitutional application of the statute;

8. Section 6 of the general appropriation act for fiscal year 1990 (St. 1989, c. 240, § 6), an outside section, unconstitutionally purports to amend the statutory scheme and formula for distribution of lottery revenues which do not require legislative appropriation; and,

9. The court should enforce the provisions of G. L. c. 29B.

In my view, the plaintiffs have no standing to raise issues 1, 2, 4, 6, 7, and 8 for the following reasons.

*Standing.* The plaintiffs are municipalities, as well as individuals who are plaintiffs in their official capacities, and as they are residents of, and taxpayers in, those municipalities.

a. *Municipalities.* We have held that a municipality cannot challenge the constitutionality of State statutes. *Trustees of Worcester State Hosp.* v. *The Governor*, 395 Mass. 377, 380 (1985) (governmental entities may not challenge the constitutionality of State statutes); *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 608 (1983) (city may not invoke certain constitutional challenges). When considering whether a school committee had standing to challenge a statute, we said: "In general, the constitutionality of a statute may be

litigated only by persons whose interests are affected." *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 328 (1982).[1] The municipalities do not have standing to present constitutionally-based challenges to the statutes at issue.[2]

b. *Municipal officials.* Municipal officials lack standing to challenge the constitutionality of statutes, unless their private rights are involved. *Id.* at 329. *Trustees of Smith College* v. *Assessors of Whately*, 385 Mass. 767, 771 & n.3 (1982) (local assessors lack power to challenge constitutional validity of granting exemptions to real estate owned by charitable or educational institution because of alleged violation of State law). *Assessors of Haverhill* v. *New England Tel. & Tel. Co.*, 332 Mass. 357, 362 (1955) (public officer whose private rights are not involved may not question the constitutionality of a statute). The officials in this case have not made the requisite showing.

Thus, neither the municipalities nor the individuals who are plaintiffs in their official capacities (such as selectmen, mayors, and school committee members) have standing to challenge the constitutionality of the statutes at issue.

c. *Individuals.* The plaintiffs in their individual capacities as residents and taxpayers must have suffered, or be in danger of suffering, legal harm in order to compel the courts to pass on the validity of the acts of a coordinate branch of government. *Doe* v. *The Governor*, 381 Mass. 702, 704 (1980). This requirement is not avoided by a prayer for declaratory relief. *Id.* Over sixty years ago this court described as a "general principle" the concept that only one whose rights are impaired may question in court the constitutionality of a statute. The court stated: "It is only when some person in-

---

[1] In *Attorney Gen.* v. *School Comm. of Essex, supra* at 329, the court did consider the issues raised by the Attorney General because he had standing to raise those challenges and was a party.

[2] If the allegation of injury is insufficient, the municipality may lack standing even where it claims to act in a representative capacity. *Slama* v. *Attorney Gen.*, 384 Mass. 620, 624-625 (1981). See *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 296-298 (1977).

vokes [the] aid [of the courts] to protect him in his liberty, rights or property as secured under the Constitution against invasion through the operation of a statute, that the courts examine objections to its constitutionality." *Horton* v. *Attorney Gen.*, 269 Mass. 503, 513-514 (1929). The court added that, in order to question the validity of a statute, one must be directly affected as to some personal interest. *Id.* at 514. The principle that strangers have no standing in the courts is considered to be "a part of the very fabric of our law." *McGlue* v. *County Comm'rs of Essex*, 225 Mass. 59, 60 (1916).

Additionally, for plaintiffs to invoke the remedy of declaratory judgment under G. L. c. 231A (1988 ed.), there must be more than controversy in the abstract; there must be a legally cognizable injury entitling a person to initiate judicial resolution of the controversy. *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977). See G. L. c. 231A, §§ 1, 9. Only one who can allege an injury within the area of concern of the statute under which the injurious action has occurred has standing. *Id.* In declaratory judgment proceedings this court has required that one who seeks declaratory relief must allege a breach of any duty owed to him. *Penal Inst. Comm'r for Suffolk County* v. *Commissioner of Correction*, 382 Mass. 527, 532 (1981).

The plaintiffs point to "the severe reductions of local services they and others . . . suffer as a result of . . . the Governor's withholding of local aid"; mention "cutbacks in education, public works, police, fire and general government services"; and claim that these are particularized injuries directly affecting each plaintiff.

The argument is not so persuasive as to warrant a grant of standing in the individual plaintiffs. While reductions of local services may occur, I am not persuaded that the plaintiffs in their individual capacities have suffered, or are in danger of suffering, *legal harm*; that a personal interest is *directly* affected; that their *rights* have been impaired; that they have demonstrated *legally cognizable injury*; or shown a breach of any *duty*. Moreover, any reductions in local services may be

attributable, at least in part, to other factors such as a lack of additional local revenue or the absence of expenditure adjustments which could contribute to an ability of the Commonwealth to continue to provide a comparable level of services.

Although, in the past, the court has recognized variations on these principles, they are not ones which aid the plaintiffs in this case. Individuals who were citizens and qualified voters had standing to argue that a measure commonly known as Proposition 2½ was not constitutionally adopted. *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 214 (1981). See *Cohen* v. *Attorney Gen.*, 354 Mass. 384, 387 (1968), and cases cited (standing shown to question whether proposed initiative amendment contains excluded matter). It is true that the court has considered actions brought by "private parties who are legitimately concerned in the performance by public officers of a public duty." *Quinn* v. *School Comm. of Plymouth*, 332 Mass. 410, 413 (1955), quoting *Cape Cod S.S. Co.* v. *Selectmen of Provincetown*, 295 Mass. 65, 69 (1936), and cases cited. See *Police Comm'r of Boston* v. *Boston*, 279 Mass. 577, 585 (1932), and *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91, 93 (1926). However, the opportunity is applicable to actions for relief in the nature of mandamus; these plaintiffs request declaratory relief from this court. See *Brewster* v. *Sherman*, 195 Mass. 222, 224-225 (1907).[3]

d. *Summary.* I conclude that neither the municipalities nor their officials have standing to challenge the constitutionality

---

[3]The court has expressed itself in some declaratory proceedings in which the issue of standing was a significant question. For example, in *School Comm. of Boston* v. *Board of Educ.*, 352 Mass. 693, 697 (1967), the court decided to indicate its views in a declaratory proceeding "involving questions of pressing public importance" and "where a vista of avoidable litigation . . . is disclosed and the issues have been fully argued." The court noted that this is a matter of discretion for the court and observed that both the plaintiffs and the defendants had expressed the hope that the constitutional issues would be decided. *Id.* at 696-697. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943). Apparently the court does not rely on this principle of discretion in its present decision.

of the statutes and actions at issue. The plaintiffs in their individual capacities as residents and taxpayers do not have standing to challenge any of the statutes or actions on constitutional grounds.