ABCD, Inc. & others[1] vs. Commissioner of Public
Welfare & others[2]
(and a companion case[3]).

Suffolk. May 8, 1979. — June 29, 1979.

Present: Hennessey, C.J., Braucher, Wilkins, Liacos, & Abrams, JJ.

*Public Welfare. Constitutional Law*, Separable portion of statute,
Equal protection of laws, Expenditure of money, Appropriation of
money. *Statute*, Separable portion of statute.

The Commonwealth properly declined to make a 6% supplementary
payment to recipients of aid to families with dependent children, as
required by St. 1978, c. 367, § 44A, on the ground that payment

---

[1] ABCD, Inc., is a nonprofit corporation organized under G. L. c. 180.
In its complaint, it describes itself as "functioning as the community
services action agency within the City of Boston" and its activities as
including "the delivery and advocacy of human services to welfare
recipients in Boston." Individual plaintiffs represent a class of persons
who are currently eligible for and receiving AFDC benefits.

[2] The other defendants in the action commenced by ABCD are the
Secretary of Human Services and the Secretary of the Executive Of-
fice for Administration and Finance.

[3] The companion action was brought by the Massachusetts Associa-
tion of Older Americans, a nonprofit corporation, which is a Statewide
organization of elderly Massachusetts residents; the Massachusetts
Union of Public Housing Tenants, a nonprofit corporation, which is an
organization of local unions of public housing tenants, some of whose
members would be eligible for AFDC or general relief benefits if the
present Massachusetts standard of need were increased by 6%; and an
individual plaintiff who represents persons who would be eligible for
AFDC if the present Massachusetts standard of need were increased
by 6%. These plaintiffs will be referred to collectively as the Massa-
chusetts Association of Older Americans (Association).

The defendants in the companion action are the Governor of the
Commonwealth and the three public officials who are defendants in
the action brought by ABCD. The defendants shall be referred to
generally as the Commonwealth.

would result in loss of Federal reimbursement and that the recipients would gain no financial advantage by payments as a result of Federal regulations requiring that the supplementary payments be treated as countable income. [331-335]

Although severance of the eligibility limitation in St. 1978, c. 367, § 44A, requiring a 6% supplementary payment to recipients of aid to families with dependent children but providing that the "supplementary payment shall not be considered in determining the eligibility for said program," would permit § 44A to be implemented effectively, severability was not justified where the eligibility limitation was a significant aspect of the legislation and disregarding the limitation would undermine the clear legislative intent of the enactment. [335-339]

A provision in St. 1978, c. 367, § 44, that a 6% supplementary payment to be made to recipients of general relief, "shall not be considered in determining the eligibility for said program" did not violate the requirements of equal protection of the laws. [340-341]

TWO CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on January 25, 1979, and February 7, 1979, respectively.

The cases were reported by *Abrams, J.*

*Edward T. Dangel, III (Michael K. Mattchen & Richard McVity* with him) for ABCD, Inc. & others.

*Mary C. Gallagher (Mark S. Coven* with her) for Massachusetts Association of Older Americans & others.

*S. Stephen Rosenfeld,* Assistant Attorney General *(John F. Hurley,* Assistant Attorney General, with him) for the defendants.

WILKINS, J. These actions challenge the refusal of the Commonwealth to make certain payments to present recipients of the program of aid to families with dependent children (AFDC) and the refusal of the Commonwealth to provide AFDC and general relief benefits to certain persons who, it is claimed, are newly entitled to such benefits. A single justice reported these cases to the full court on the complaints, a joint motion to consolidate the actions, a class stipulation, and a statement of agreed facts.[4]

---

[4] The joint motion to consolidate, assented to by the Attorney General, is allowed. The class stipulation, also assented to by the Attorney

The plaintiffs seek a determination that the Common-
wealth's response to the enactment of § 44 and § 44A of
St. 1978, c. 367 (the general appropriation act for the 1979
fiscal year), is unlawful. Section 44A, which is set forth in
full in the margin,[5] provides a 6% supplementary pay-
ment in the 1979 fiscal year for each recipient of AFDC,
computed on the net monthly consolidated grant payable
to that recipient. Section 44, which is also set forth in the
margin,[6] provides each recipient of the program of gener-
al relief a 6% supplementary payment based on the
standard needs portion of each monthly grant payable to
each recipient. Each section contains, in identical lan-
guage, a sentence stating that "[s]aid supplementary pay-
ment shall not be considered in determining the eligibili-
ty for said program."[7]

General, indicates that the actions may proceed properly as class
actions under Mass. R. Civ. P. 23, 365 Mass. 767 (1974), and an appro-
priate order certifying the two classes (current AFDC recipients and
potential AFDC and general relief recipients, respectively) shall be
entered in the county court.

[5] Statute 1978, c. 367, § 44A, reads: "For fiscal year nineteen hun-
dred and seventy-nine each recipient of the program of aid to families
with dependent children shall receive a six per cent supplementary
payment as computed on the net monthly consolidated grant payable
to each recipient. Said supplementary payment shall not be consid-
ered in determining the eligibility for said program."

[6] Statute 1978, c. 367, § 44, reads: "For fiscal year nineteen hundred
and seventy-nine each recipient of the program of general relief shall
receive a six per cent supplementary payment as computed on the
standard needs portion of each monthly grant payable to each recipi-
ent. Said supplementary payment shall not be considered in determin-
ing the eligibility for said program."

[7] The challenge to the Commonwealth's failure to implement in-
creased benefits for recipients of general relief, as provided in § 44, has
been mooted in large part because, after these actions were com-
menced, the Commonwealth undertook to provide the mandated in-
crease in benefits for persons eligible for general relief. The program
of general relief is funded exclusively by the Commonwealth, and thus
general relief benefits, unlike AFDC, are unaffected by partial Feder-
al reimbursement and questions of conformity or nonconformity with
requirements of Federal law. Only one issue remains concerning gen-
eral relief, an equal protection challenge to the provision in § 44 that

The Commonwealth has concluded that § 44A's 6% supplemental payments for current AFDC recipients should not be paid because, not only will those payments not qualify for the approximately 50% reimbursement normally available from the Federal government, but any such payments will have to be reflected in corresponding reductions in AFDC payments to AFDC recipients. Thus the Commonwealth argues that it need not implement § 44A because, if it did, the legislative purpose of increasing payments to AFDC recipients would not be achieved. ABCD challenges these conclusions, claiming an improper executive impoundment of funds. We conclude that the Commonwealth properly declined to pay the additional 6% allowance to current AFDC recipients because to make such payments would be futile.

The Massachusetts Association of Older Americans (Association) presents a different contention. Its concern is with the interests of certain persons not currently eligible for AFDC or general relief benefits. The Association's challenge is to the Legislature's attempt to provide additional benefits only to current AFDC and general relief recipients, and to those who would be eligible for benefits under the law as it stood before the 1978 statutory changes. The Association, unlike ABCD, accepts the Commonwealth's conclusion that the AFDC program as restricted by § 44A conflicts impermissibly with Federal law. It asserts, however, that the legislative classifications in both § 44 and § 44A deny equal protection of the laws to certain persons who are ineligible for public welfare benefits despite the fact that they have fewer resources than some welfare recipients have after receiving welfare benefits. The Association then argues that to avoid § 44A's conflict with Federal law and to avoid the

the increase in general relief payments "shall not be considered in determining the eligibility for said program." The Commonwealth has construed this limitation as barring a new, higher standard of eligibility at which persons may become entitled to general relief benefits.

equal protection problem, the invalid portions of § 44 and § 44A, including the eligibility restriction of each section, should be treated as severable. Once these portions are severed, the argument goes, the remaining provisions of § 44 and § 44A can be implemented, thus permitting additional persons to qualify for AFDC and general relief benefits and all recipients to obtain benefits at the higher level expressed in the 1978 act.[8]

We conclude that the eligibility restriction of § 44A is not properly severable. The result is that no portion of § 44A, concerning AFDC, need be implemented. In addition, we find no denial of equal protection of the laws in the classifications made by § 44 concerning general relief.

### The ABCD Case

Each State that participates in the AFDC program authorized by the Social Security Act (42 U.S.C. § 601 et seq. [1976]) administers its program under a plan that must be approved by the United States Department of Health, Education, and Welfare (HEW) as a pre-condition to reimbursement by the Federal government of a percentage (approximately 50% in Massachusetts) of the payment made to AFDC recipients. *Id.* at §§ 601, 603. See *Carroll v. Acting Director of Pub. Welfare,* 355 Mass. 182, 187 (1969). The Commonwealth has had such a program for many years. See St. 1936, c. 413. The AFDC program of each State must have standards of assistance used to determine need and to establish a level of AFDC benefits, not in excess of the standard of need, for each individual or family.[9] See *Rosado* v. *Wyman,* 397 U.S. 397, 408 (1970);

---

[8] ABCD joins in the severability argument only as a fallback position if it loses on its contention that the 6% increase provided in § 44A can be implemented without running afoul of Federal law. ABCD actively challenges the claim that § 44A presents an equal protection problem, and thus advances the severability argument only in response to a determination that, as written, § 44A is invalid.

[9] The standard of need in Massachusetts is determined in part on the basis of the cost of food, rent, fuel, utilities and other necessities. These items are included in consolidated grant tables which represent

*Bourgeois* v. *Stevens*, 532 F.2d 799, 802-803 (1st Cir. 1976); 45 C.F.R. § 233.20(a)(2) and (b)(2) (1978). In this Commonwealth, the level of benefits is 100% of the standard of need for AFDC. The net payment to a recipient is determined by deducting from the full standard of need for that recipient any "countable income," that is, income from other sources that, under existing State and Federal regulations, is not to be disregarded and must be counted against the amount otherwise payable. See 42 U.S.C. § 602(a)(8) (1976). See generally *Shea* v. *Vialpando*, 416 U.S. 251, 254 (1974).

In July, 1978, following the enactment of the appropriation bill for the 1979 fiscal year (containing §§ 44 and 44A), questions were raised whether the provisions of § 44A complied with Federal requirements for an AFDC program. In July, 1978, HEW's Acting Assistant Regional Commissioner for Family Assistance sent a letter to the Commissioner of Public Welfare. That letter indicated that payments in excess of the standard of need were not contemplated by the Federal AFDC program and that the Commonwealth's failure to increase the standard of need raised questions of conformity to Federal requirements. The Acting Assistant Regional Commissioner stated that it was doubtful whether "HEW would be able to provide Federal financial participation in the 6% supplementary payments made under [§ 44A]." He also noted that amounts paid above the standard of need would be considered income to the recipient which would require a dollar-for-dollar reduction in that recipient's AFDC payment. The letter expressed doubt whether "the Massachusetts Legislature intended to have the 6% supplementary payment cause a reduction in the AFDC

---

a monthly allowance for each size AFDC family. The standard of need for a given family in any month is found by adding to the consolidated grant amount for its family size a relatively small additional amount equal to one-third of what is called the "quarterly payment" for that family size.

grant with no net benefit to the recipients." The Acting
Assistant Regional Commissioner also questioned the im-
plementation of that provision in § 44A which directed
that the 6% supplementary payment should be computed
"on the *net* monthly consolidated grant payable to each
recipient" (emphasis supplied). The standard of need in-
cludes the monthly portion of a quarterly payment, but
§ 44A does not increase this element by 6%. Nor does
§ 44A provide any increase in the portion of a recipient's
standard of need which is met by "countable income."
The 6% additional payment disregarded these items and
thus, the letter indicated, did not treat all types of income
in the same way, as required by 45 C.F.R. § 233.20(a)(1)
(1978). Subsequently, HEW formally disapproved a pro-
posed amendment to the Commonwealth's AFDC State
plan which undertook to implement § 44A.

The result of the position taken by HEW, with which
the Commonwealth agrees, is that the Federal govern-
ment would decline to participate financially in any 6%
supplemental payment, and, if any such payment were
proposed to be made, the amount of the payment would
be considered "countable income," thus reducing corre-
spondingly the AFDC payments to be made.[10] The parties
stipulated that, if the Commonwealth were to implement
§ 44A, as written, and were to treat § 44A payments as
"countable income," recipients would realize no net in-
crease as a result of those payments. Further, the parties
agreed that if the § 44A payments were not treated as
"countable income" to recipients, HEW might seek to
penalize the Commonwealth. See 42 U.S.C. § 604 (1976).

ABCD argues that the Commonwealth should have
pressed its case further with HEW. We need not consider
whether the Commonwealth may rely conclusively in
this case on HEW's interpretations of its regulations.

---

[10] It was anticipated that the implementation of § 44A would cost
approximately $25,000,000, of which about one-half was expected to be
covered by Federal reimbursement.

HEW's assessment of the situation was unequivocal, and its interpretations are entitled to considerable weight in any judicial proceeding. See *Miller* v. *Youakim,* 440 U.S. 125, 144 (1979); *Quern* v. *Mandley,* 436 U.S. 725, 738 (1978); *New York Dep't of Social Servs.* v. *Dublino,* 413 U.S. 405, 421 (1973); *Lewis* v. *Martin,* 397 U.S. 552, 559 (1970). Here, in any event, we agree that, if the 6% supplementary payments were made, no Federal contribution would be available toward those payments and the recipients would gain no financial advantage.[11]

In light of the utter futility of making 6% supplementary payments to current AFDC recipients, we think that the Commonwealth was justified in not implementing § 44A by impounding that portion of the appropriation for AFDC that was intended to fund it.[12] Certainly, the

---

[11] These Federal regulations are not in all respects a picture of clarity on these points, but ABCD's arguments as to how the supplementary payments could be disregarded as countable income are without merit. It is accepted that "Federal participation" is available only "when the payments do not exceed the amount determined to be needed under the statewide standard." 45 C.F.R. § 233.20(b)(2) (1978).

ABCD focuses its argument on the position taken by HEW and by the Commonwealth that payments in excess of the standard of need will require a corresponding reduction in AFDC payments. We reject the suggestion that the supplementary payment should be construed as an excludable or reserved asset under 45 C.F.R. § 233.20(a)(3)(i) (1978). The proposed 6% supplementary payment would have been income under the applicable Federal regulations as being "actually available for current use on a regular basis." 44 Fed. Reg. 12, 424 (1979) (to be codified in 45 C.F.R. § 233.90[a][1]). See 45 C.F.R. § 233.20(a)(1) (1978). As such, it would have to be considered in advance in determining the appropriate AFDC payment in any current month. See 45 C.F.R. § 233.20(a)(3)(ii)(D) (1978). The Commonwealth had no option to treat those supplementary payments as nonduplicative. See 45 C.F.R. § 233.20(a)(3)(vii) (1978).

We have dealt with ABCD's contentions. If there is any other basis for arguing that the Commonwealth could have paid all or a portion of the payments mandated by § 44A, we treat such argument as waived.

[12] The appropriation for AFDC for fiscal 1979 was $527,000,000. St. 1978, c. 367, § 2, Item 4403-2000. It was estimated, in the statement of agreed facts, that there were sufficient funds remaining to implement a 6% increase in the standard of need, assuming no significant change in circumstances.

refusal was warranted until a judicial determination could be made whether the decision was correct. The loss of Federal reimbursement is itself a major departure from the expectations the Legislature must have had.[13] In any event, the futility of making the increased payments contemplated by § 44A conclusively justifies the Commonwealth's determination not to implement it.

Although the circumstances in which the Executive Department may decline to implement legislation are strictly limited by constitutional principles (*Opinion of the Justices*, 375 Mass. 827 [1978]), it has some discretion "not to spend money in a wasteful fashion, provided that [it] has determined reasonably that such a decision will not compromise the achievement of underlying legislative purposes and goals." *Id.* at 836. Here, every dollar spent on 6% supplemental payments pursuant to § 44A would have been wasted. Although the current Legislature has the authority to rectify the situation, the executive branch acted properly in not implementing § 44A.

## The Association's Case

To this point in this opinion, we have been concerned with ABCD's arguments on behalf of current recipients of AFDC. ABCD has contended that there is no supremacy clause problem because the plan can be implemented without contravening Federal requirements. Our discussion has shown that § 44A does violate Federal AFDC requirements and further that any attempt to implement § 44A's 6% increase in payments would be futile.

---

[13] The Attorney General concedes that loss of Federal funds alone would not justify the Commonwealth's refusal to implement § 44A. That concession may not have been necessary, considering the general assumption of Federal financial participation. See G. L. c. 18, § 10, concerning the general legislative expectation of conformity of the Commonwealth's welfare programs with "all requirements governing the granting of federal aid to the commonwealth."

We have not been concerned solely with the question whether the Commonwealth on its own may provide benefits in addition to those required by the Federal government. Compare *Ottman* v. *Fisher*, 319 A.2d 56, 62 (Me. 1974), where the court indicated that the State might provide AFDC benefits beyond those authorized by HEW, but there was no question of the futility of making such payments. Here, relevant Federal law renders the 6% payment futile and prohibits the exclusion from AFDC benefits of persons whose income exceeds the standard of need but would not exceed it if that standard were increased to reflect the 6% supplementary payment ordered by § 44A. ABCD has not shown how the State's failure to increase the standard of need to the level of payments extended by § 44A to current AFDC recipients, and thus its denial of eligibility to certain persons, can be squared with Federal requirements. To be sure, ABCD is concerned in this case only with the interests of current recipients. However, the application of Federal supremacy principles makes the pattern of § 44A, as written, unacceptable as to a class of potential recipients of AFDC, a point that we cannot ignore.[14]

We turn then to the argument of the Association, which accepts the point that § 44A as written violates Federal requirements. It urges that those portions of § 44A that can be implemented without contravening Federal standards should be put into effect and the balance of § 44A severed and disregarded. We are dealing with a subject not often considered by courts treating AFDC questions. In the typical case, where a court has held that a State statute or regulation cuts back impermissibly on benefits in light of Federal requirements for an AFDC program, the court has treated the State provi-

---

[14] It is, of course, clear under the supremacy clause that any State law or regulation that limits eligibility in a manner inconsistent with the terms and conditions under which money is disbursed to States for AFDC is to that extent, at least, invalid. *Carleson* v. *Remillard*, 406 U.S. 598, 601 (1972). *King* v. *Smith*, 392 U.S. 309, 333 n.34 (1968).

sion as inoperative and has assumed that the State's AFDC program will be carried on as if the invalid State provision no longer existed. See *Townsend* v. *Swank*, 404 U.S. 282, 285 (1971); *King* v. *Smith*, 392 U.S. 309, 333 (1968); *Ottman* v. *Fisher*, 319 A.2d 56, 60-61 (Me. 1974). Normally, this conclusion is correct because of the general expectation that the State does not intend its entire participation in a Federally approved AFDC program to cease simply because of one element of noncompliance. Moreover, there has not always been a need in such cases to consider carefully the severability of a State statute because Federal courts may not grant retroactive financial relief against States that have failed to comply in some respect with Federal AFDC requirements. See *Quern* v. *Jordan*, 440 U.S. 332 (1979); *Edelman* v. *Jordan*, 415 U.S. 651 (1974). The Eleventh Amendment bars money judgments against States for past failures to provide AFDC benefits. See *Quern* v. *Jordan, supra*; *Edelman* v. *Jordan, supra.* In granting relief, the Federal courts have acted prospectively, respecting the fiscal autonomy of each State, since each State has the opportunity to make such corrective changes in its AFDC program as it may wish or to withdraw entirely from participation in the Federal program. See *Townsend* v. *Swank*, 404 U.S. 282, 292 (1971) (Burger, C.J., concurring). Courts have not often discussed the possibility that a statutory amendment might be implemented in part with its invalid aspects excised. See *Rosado* v. *Wyman*, 397 U.S. 397, 420-421 (1970). It is this possibility — the severability of portions of § 44A — on which the Association relies.

The Association grants that § 44A cannot be implemented effectively because it conflicts with the Social Security Act. It argues that the classifications made by § 44A violate the rights of certain needy persons to equal protection of the laws. We agree that the implementation of § 44A as written would be futile. We also agree that the "cure" of severability that the Association prescribes would remedy not only the futility problem but also any

possible equal protection defects in § 44A. However, because we reject the view that the problematic portions of § 44A are severable, we need not determine whether those equal protection claims have merit.[15]

The Association's severability argument, if accepted, would eliminate § 44A's major conflicts with Federal AFDC requirements. The Association contends that the limitation on eligibility expressed in the second sentence of § 44A should be disregarded; that the 6% supplementary payment should be computed on the consolidated grant, disregarding the words "net monthly" in § 44A; and that the balance of the statute should then be permitted to have full effect. So revised, § 44A could then reasonably be construed to increase the standard of need by the amount of the 6% supplementary payment.[16] If the standard were increased, additional persons would be eligible for AFDC benefits and the 6% supplementary payment would not exceed the standard of need. The parties have stipulated that such an increase in the standard of assistance would permit "1000 to 3000 additional individuals or families" to be eligible for AFDC benefits.

The major surgery that the Association argues we should perform on § 44A in order to implement lawful concepts expressed in § 44A is far more radical than any this court has performed previously. The Association grants that the Legislature was concerned about restricting the increased costs of public assistance. We see no justification for this court to disregard significant expres-

[15] We perceive no reason to approach the severability question differently because a statute allegedly violates the requirements of equal protection of the laws.

[16] It would then somewhat resemble other recent statutes that the Commissioner of Public Welfare has construed as increasing the standard of need by means of percentage increases in the basic grant. See St. 1976, c. 283, § 2, Item 4403-2007 ("a five per cent cost-of-living increase ... to be applied only to the monthly direct grant"), and St. 1977, c. 363A, § 75 ("A three per cent adjustment to the basic grant").

sions of legislative intent. There is no severability clause applicable to § 44A, and we would be engaging in the sheerest speculation as to the Legislature's intent if we were to assume that the Legislature would have adopted § 44A in the revised form the Association urges.

The general rule concerning severability is that "[w]henever various portions of a statute have independent force, thus justifying the inference that the enacting body would have passed one without the other, this court will uphold the remainder of the enactment after the offending portion has been struck." *Del Duca* v. *Town Adm'r of Methuen*, 368 Mass. 1, 13 (1975), and authorities cited. A statute, such as § 44A, that purports to make a change in existing law but is unlawfully restrictive is not a ready candidate for rescue under severability principles. See *Dalli* v. *Board of Educ.*, 358 Mass. 753 (1971); 2 C. Sands, Sutherland's Statutory Construction § 44.13 (4th ed. 1973). The proposed remedy in this case would not simply permit a part of a statute to be effective when another part cannot be. Rather, it would tear down a consciously erected legislative barrier and thus allow the limited legislative purpose to escape into the very area from which it was to have been excluded. A conclusion that the Legislature would have intended such a result cannot be justified in this instance. See *Massachusetts Pub. Interest Research Group* v. *Secretary of the Commonwealth*, 375 Mass. 85, 91 (1978). The eligibility limitation of § 44A was not an insignificant aspect of the legislation. It was added in the course of the Legislature's consideration of the budget.[17] We decline to disregard the plain language of § 44A, particularly where to do so would result in the expenditure of funds for a purpose not intended.

[17] 1978 House Doc. No. 5560, § 47, and 1978 House Doc. No. 5710, § 46, provided for a 6% adjustment to the basic grant for recipients of AFDC and general relief without qualification, and would have increased the standard of need in both programs.

One final contention of the Association remains for consideration. It concerns the operation of § 44, and specifically the limitation on eligibility that is expressed in § 44 in the same fashion as the limitation on eligibility is expressed in § 44A. The Association argues that the failure to include the 6% increase in determining the eligibility of persons not already on general relief violates principles of equal protection of the laws. Because the general relief program is funded solely by the Commonwealth and because the Commonwealth has fully implemented § 44 as written, none of the objections discussed earlier concerning § 44A is relevant here.[18]

The Association points out that certain persons not now receiving general relief would qualify for assistance if the standard of need were increased to reflect the 6% supplementary payment.[19] It argues that persons already receiving general relief (and persons newly qualifying under the unchanged eligibility standards) will be entitled to the 6% supplementary payments and will thus receive assistance in circumstances not rationally distinguishable from those applicable to certain persons not eligible for general relief.

The classification made by § 44 does not violate equal protection principles. Decisions of the Supreme Court of the United States grant considerable leeway to States in fashioning classifications in welfare programs. See *Jefferson* v. *Hackney*, 406 U.S. 535, 545-551 (1972); *Dandridge* v. *Williams*, 397 U.S. 471, 483-487 (1970). Our decisions

---

[18] Section 44, unlike § 44A, provides for its 6% supplementary payment to be "computed on the standard needs portion of each monthly grant" and thus the possible problem in § 44A concerning the *net* monthly grant is inapplicable here.

[19] The parties have stipulated that there are "approximately 100 to 200 additional individuals and families who would be eligible for [general relief] if the present standards of assistance were increased by 6%." They have further agreed that "[t]he fiscal 1979 appropriation for [general relief] has sufficient monies remaining to pay a 6% increase in the [general relief] standard of assistance, retroactive to July 1, 1978."

have also acknowledged the wide range of legislative discretion. See *Rosary* v. *Commissioner of Pub. Welfare,* 370 Mass. 862 (1976); *Opinion of the Justices,* 368 Mass. 831, 845-849 (1975). See also *Massachusetts Pub. Interest Research Group* v. *Secretary of the Commonwealth,* 375 Mass. 85, 92-97 (1978). Classifications that are less than perfect or that solve only part of a problem have been upheld. See *Dandridge* v. *Williams, supra* at 486-487. See also *Amherst-Pelham Regional School Comm.* v. *Department of Educ.,* 376 Mass. 480, 495-496 (1978). The legislative desire to conserve public funds and to direct funds to a limited class of recipients is entitled to respect. *Opinion of the Justices, supra* at 845-846.

The Association has failed to demonstrate that the exclusion from general relief of certain potential recipients is not a rational choice. Such a limitation provides a means of accomplishing the Commonwealth's objective of preserving the fiscal integrity of its welfare programs. The Legislature could have concluded that the modest amount of assistance that would have been granted to certain persons if the eligibility standard had been raised was not a wise use of resources.[20]

## Conclusion

We are not unsympathetic with the concerns of persons for whom the Legislature intended an increase in AFDC payments, but the pattern the Legislature selected in an attempt to achieve that result has defects for whose cure a legislative remedy alone is available.

Judgments shall be entered in the county court declaring that the Commonwealth properly declined to implement St. 1978, c. 367, § 44A, and that the eligibility limitation in St. 1978, c. 367, § 44, for general relief does not deny equal protection of the laws.

*So ordered.*

---

[20] Because we conclude that there is no equal protection violation, we need not consider whether the appropriate remedy for underinclusiveness would be an extension of coverage to the excluded class or nullification of the entire statute. See *Califano* v. *Westcott,* 443 U.S. 76, 89-93 (1979).